### DÁVILA v. DÁVILA ET AL.

### APPEAL from the District Court of Arecibo.

No. 716.—Decided March 8, 1912.

ACTION OF EJECTMENT—DEMURRER—INSUFFICIENT COMPLAINT—TITLE OF PLAIN-
TIFF.—The plaintiff in this case claimed the ownership of 30 *cuerdas* of land alleging that they formed part of another property of 350 *cuerdas* which once belonged to his father and that at the death of the latter the whole property was adjudicated to his mother who prosecuted in her own name a proceeding to obtain a possessory title and recorded the same in the registry so that she could afterwards issue to each heir, of which the plaintiff was one, his corresponding title. The plaintiff did not allege that a title to his share had been issued to him or that he had the same recorded in the registry. The defendant has his title recorded in the registry of property. *Held:* That the complaint does not allege facts sufficient upon which to base the action of ejectment because the fact that the plaintiff's claim is based only on the ground that he is one of the heirs is not in itself sufficient upon which to base a claim for a specific part of an inheritance when there are several heirs, and because the alleged partition was not made in lawful form; and even though it should be considered sufficient no allegation has been made to the effect that his ancestor had issued to the plaintiff a title to his share.

The facts are stated in the opinion.
*Mr. Rafael López Landrón* for appellant.
*Mr. Augusto Malaret* for respondents.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The judgment from which this appeal is taken was rendered on a demurrer filed by defendant. One of the grounds of the demurrer, to which we will confine our examination because it is fundamental in this case, sets up that the com-

plaint did not allege facts sufficient to constitute a cause of action. The principal ground upon which this demurrer is based is that plaintiff brings an action for recovery of real property without alleging a real title of ownership in his favor.

The plaintiff in his complaint alleges that ever since 1878 he has been in possession of a property of 30 *cuerdas,* describing it, which is part of another property, which he also describes, consisting of 350 *cuerdas,* and that "this property of 350 *cuerdas* was the patrimony of the late Andrés García, and was to be divided between his widow, Petrona Quiñones, and his 10 children, namely, Juan Andrés, Andrés Avelino, Vicente Ferrer, Luis Leonidas, María del Carmen, Juana Francisca, María del Rosario and María de los Dolores Dávila y Quiñones; and that at the death of García, which occurred in 1877, since no recordable title was available, these heirs decided upon dividing the property, giving the widow 50 *cuerdas* of land and the house, and a piece of 30 *cuerdas* to each of the children, which agreement being carried out, each heir was given the portion allotted to him and was put in possession thereof; and in order to save expenses it was further agreed that the widow, Petrona Quiñones, should prosecute in her own name a proceeding to obtain a possessory title so that she could afterwards issue to each heir his or her title when necessary. That the widow, Petrona Quiñones, in carrying out this agreement commenced proceedings to obtain a possessory title to the above-mentioned properties, wherein an order granting the title prayed for was rendered by the municipal judge of Morovis on June 30, 1888, and was subsequently recorded in the registry for that district in volume 5 of Morovis, folio 101, first entry, property 229.

It is further alleged by plaintiff that he gave his own portion of land to his brother, Juan Dávila, whose financial condition was precarious, that he might cultivate it without paying rent or any other charge. That at the death of his brother his children, Francisco and Juan Dávila, the de-

fendants herein, continued in possession of the property under the same conditions that their father had it. That the defendant, Francisco Fuxench, by the use of deceit and threats, representing himself as a creditor of Juan Dávila, caused Dávila's children to sign an instrument, the contents of which they did not know, and that when he had secured the document, he immediately proceeded to bring an action in his own name to obtain a possessory title to that property, and upon securing a favorable decision, which was rendered on August 9, 1907, proceeded to record it in his name; and that said Fuxench afterwards sold that property to the other de- fendant, Evaristo Camacho, who well knew the defects vitiat- ing the vendor's title.

Now that all the facts alleged by plaintiff have been fully considered, would the conclusion follow that plaintiff has proven a proper title in his favor sufficient to support the action commenced by him? Let us see.

If we bear in mind the fact that plaintiff's claim is based simply on the ground that he is one of the heirs, such ground is not in itself sufficient, under the jurisprudence established by the Supreme Court of Spain in its decision dated June 13, 1901, and by the decisions of this court in *Velilla* v. *Pizá et al.,* 17 P. R. R., 1069 and *Cruz et al.* v. *Ortiz,* 17 P. R. R., 1134.

And if we consider that the plaintiff attempted to allege the existence of a partition such as the law provides when granting to heirs the exclusive ownership of properties awarded to them, we would find that the facts alleged by him do not prove that such partition was legally carried out. And even accepting as proper the procedure followed to prove the possession by Petrona Quiñones, plaintiff's mother, of the property of 350 *cuerdas,* which is the only hereditary estate, so that it could afterwards be recorded in the registry of property, we find that no allegation has been made to the effect that Petrona Quiñones had issued to plaintiff the title to his share, and much less that plaintiff had recorded such title in the registry.

For the reasons above given this appeal should be dismissed and the judgment affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf, and Aldrey concurred.